**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

NIKITA KOSNIKOV,

Petitioner,

v.

WARDEN, FOLKSTON ICE PROCESSING CENTER,

Respondent.

CIVIL ACTION NO.: 5:25-cv-213

**ORDER AND REPORT AND RECOMMENDATION**

Petitioner Nikita Kosnikov ("Kosnikov"), who is detained at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Doc. 1. Respondent filed an Answer-Response and a Motion to Dismiss, docs. 4, 13, and Kosnikov filed a Response to the Motion to Dismiss, doc. 16. After the parties briefed this Motion, I issued a Report and Recommendation in another prolonged detention Immigration and Customs Enforcement ("ICE") case pending in this Court, Alekhin v. Warden, Case No. 5:25-cv-58, ECF No. 36 (S.D. Ga. June 2, 2026). I ordered the parties to provide supplemental briefing in light of my Report and Recommendation in that case, and they timely filed their briefs. Docs. 25, 26. The Petition is ripe for review.

For the following reasons, I **RECOMMEND** that the Court **GRANT in part** Kosnikov's Petition, doc. 1, **ORDER** Respondent to provide Kosnikov with an individualized bond hearing within seven days of final resolution in this case, and **DENY** Respondent's Motion to Dismiss. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and

enter the appropriate judgment of dismissal. Kosnikov also filed a Motion to Expedite, doc. 27, which I **GRANT**, to the extent I am issuing this Report.

## BACKGROUND

Kosnikov is a native and citizen of Russia who entered the United States on March 27, 2024. Doc. 4-1 at 2. He applied for admission and was placed in expedited removal proceedings and entered ICE custody on April 1, 2024. Id. On April 11, 2024, the United States Citizenship and Immigration Service ("USCIS") "made a positive initial determination" on Kosnikov's request for relief from removal. Id. USCIS served Kosnikov with a notice to appear ("NTA") on April 19, 2024, and charged him as being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Id.

Beginning on April 29, 2024 and continuing through August 2, 2024, Kosnikov had a series of scheduled hearings before an immigration judge and was granted continuances. Id. at 2–3. Kosnikov appeared, with counsel, before an immigration judge on August 23, 2024, for a master calendar hearing, and the immigration judge sustained the charge of removability. Kosnikov had an individual merits hearing on March 12, 2025, at which the immigration judge denied Kosnikov's motion to terminate proceedings. Id. at 3. The immigration judge denied Kosnikov's second motion to terminate on May 9, 2025, and Kosnikov appealed this determination. The Board of Immigration Appeals ("BIA") dismissed the appeal on June 17, 2025. The immigration judge heard the merits of Kosnikov's case on July 25, 2025, and issued a written decision granting Kosnikov relief from removal on September 17, 2025. Id. The Department of Homeland Security ("DHS") appealed this decision on October 16, 2025. Id. at 4,

128. This appeal remains pending. Doc. 25-1 at 2. An immigration judge denied Kosnikov's request for bond after a hearing, where Kosnikov appeared with counsel, on July 9, 2026. Id.[1]

Kosnikov has been in DHS custody since March 27, 2024. Doc. 1 at 2. DHS states Kosnikov is detained as an arriving alien under 8 U.S.C. § 1225(b), which requires mandatory detention pending the outcome of his immigration court proceedings. Doc. 4 at 4. As of the date Kosnikov filed his Petition on December 9, 2025, he had been in detention for 21 months. Now, Kosnikov has been detained for nearly 29 months, or over 2 years.

Kosnikov argues that his detention has become "prolonged and arbitrary," which he says violates the Fifth Amendment. Doc. 1 at 6. Kosnikov argues that he was granted asylum (relief from removal) in September 2025, and DHS's appeal of that decision does not justify his continued detention. Id. at 7. In addition, Kosnikov states that a refugee/asylum relative petition was filed on his behalf in February 2025 and that petition also remains pending. Id. Kosnikov asks for his immediate release on parole or on bond. Id. at 8.

## DISCUSSION

Kosnikov is detained under 8 U.S.C. § 1225(b), which governs expedited removal procedures of arriving aliens. Under the express terms of the statute, bond is not available to those detained pending removal proceedings under § 1225(b).[2] See Jennings v. Rodriguez, 583 U.S. 281, 302 (2018) (noting § 1225(b) "mandate[s] detention of aliens throughout the

---

[1] Respondent attached the declaration of Nicholas McLeod, a deportation officer, to his supplemental brief. Doc. 25-1. Officer McLeod references "Exhibit A" in his declaration, but there are no exhibits attached to this declaration.

[2] The only statutory exception to detention under either § 1225(b)(1) or (2) is parole. "[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A); and then citing 8 C.F.R §§ 212.5(b) & 235.3); see also 8 C.F.R. § 212.5(a) (noting parole requests are considered by designated officials including ICE "directors of field operations.").

completion of applicable proceedings."); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020) (citing 8 U.S.C. § 1225(b)(1)(B)(ii) and holding that even "[a]pplicants who are found to have a credible fear may [] be detained pending further consideration of their asylum applications.").

Kosnikov is thus subject to mandatory detention under § 1225(b). However, Kosnikov contends that his detention has become so prolonged that it violates his due process rights. To remedy the due process violation, he asks the Court to order Respondent to provide him with release on bond or on parole. Doc. 1 at 7.

Respondent argues that Kosnikov is lawfully and mandatorily detained under 8 U.S.C. § 1225(b)(1) because the BIA has not issued a decision on DHS's appeal.[3] Doc. 13 at 1, 3. Respondent states that Kosnikov has been afforded all the process due to him as an arriving alien.[4] Id. at 3.

## I. The Parties' Due Process Arguments

Respondent argues that Kosnikov's due process rights are limited to "the relief provided by statute . . . ." Id. at 8. Because § 1225(b)(1) provides for mandatory detention with

[3] Respondent briefly raises jurisdictional bars to the Court's review in both his Answer-Response and Motion to Dismiss. Doc. 4 at 1–2 nn. 2, 3, 4; Doc. 13. Respondent does not address any such bar in his supplemental briefing, though, in fairness, I did not direct supplemental briefing on this matter. Docs. 20, 25. The Court should reject any argument that 8 U.S.C. § 1252(b)(9), (e)(2), or (g) bars Kosnikov's claims, as Kosnikov is not challenging his removal proceedings, only his prolonged detention.

[4] Respondent states Kosnikov raises a Zadvydas v. Davis, 533 U.S. 678 (2001) claim in his Petition. Doc. 13 at 5 n.4. Indeed, Kosnikov asserts, "There is no significant likelihood of removal in the reasonably foreseeable future." Doc. 1 at 7. However, Kosnikov mentions nothing of a final order of removal, and it is clear that Kosnikov is challenging his continued detention while his immigration proceedings are pending. See Doc. 16 at 1 ("This case concerns prolonged pre-final-order detention . . ., not post-removal-order detention under [8 U.S.C.] § 1231."). Therefore, there is no need to address Respondent's assertions regarding any Zadvydas claims.

discretionary parole as the only mechanism to seek release, Kosnikov is "not entitled to a bond or a bond hearing" in accord "with applicable binding precedent[.]"[5] Id. at 10.

In supplemental briefing, Respondent acknowledges that, if the Court adopts my Report and Recommendation in Alekhin, "it will control the result in this case and require application of a five-factor test to determine whether [Kosnikov]'s detention has become unconstitutionally prolonged, thus warranting a bond hearing." Doc. 25 at 8.[6] Respondent argues, however, that Kosnikov does not allege a procedural due process claim but a substantive due process claim. Id. at 9. And, according to Respondent, "[w]hen analyzed in terms of substantive due process," Kosnikov's "claims fail" because they "do not implicate any fundamental rights." Id. at 11. Respondent further argues that the factors laid out in my Alekhin Report and Recommendation support his position that Kosnikov's detention has not become unconstitutionally prolonged. Id. at 14. Kosnikov argues in response that each factor in Alekhin supports granting relief. Doc. 26.

## II. Respondent's Characterization of Kosnikov's Claim as a Substantive Due Process Claim Is Unconvincing

At the outset, I address Respondent's argument that Kosnikov actually raises a substantive due process claim, not a procedural due process claim. For the following reasons, I reject Respondent's argument about the nature of Kosnikov's claim.

---

[5] This assertion is reminiscent of an entry-fiction argument. I addressed the entry-fiction doctrine extensively in my Alekhin Report and Recommendation, and my conclusions there apply with equal force to these facts. See Alekhin, Case No. 5:25-cv-58, ECF No. 36. Additionally, in supplemental briefing, Respondent mentions the entry-fiction doctrine only once, doc. 25 at 6, so I do not discuss it further.

[6] Respondent also states he "incorporates" the objections to my Report and Recommendation that Respondent filed in Alekhin "pursuant to Federal Rule of Civil Procedure 10(c)." Doc. 25 at 8. Rule 10(c) governs incorporation of statements made in pleadings, not arguments made in motions or objections to Reports and Recommendations. Further, the prevailing interpretation in this Circuit is that Rule 10 does not allow adoption across different cases. See Halbert v. Credit Suisse AG, 402 F. Supp. 3d 1288, 1302 n.1 (N.D. Ala. 2019) ("[A]llegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference.") (citation omitted). Regardless, I acknowledge Respondent's adopted arguments and have considered them in making my conclusions.

Kosnikov expressly alleges that his detention has become unconstitutional because it has become "prolonged." Doc. 1 at 6. Kosnikov does not contend that mandatory detention under § 1225(b) is unlawful in all contexts; instead, Kosnikov contends that his detention—for nearly two years at the time of filing and now over two years without an individualized bond hearing—has become so prolonged that it has become unconstitutional.

As noted, Respondent argues that Kosnikov's claim is actually a substantive due process claim, not a procedural due process claim. Doc. 25 at 9–14. Respondent contends that Kosnikov's claim is substantive because "he appears to argue that this determination [to classify him under § 1225(b)] is inadequate to justify the deprivation at issue." Id. at 9. Respondent acknowledges that Kosnikov requests an additional procedure (i.e., a bond hearing) but distinguishes the procedure as "merely a vehicle for making a substantive determination about flight risk or dangerousness that [Kosnikov] believes is necessary to justify his detention." Id. Kosnikov recognizes that I have rejected this argument before and encourages the Court to reject the argument again in this case. Doc. 26 at 4.

Respondent relies largely on Conn. Dep't of Pub. Safety v. Doe, 583 U.S. 1 (2003) (Connecticut v. Doe), to support his characterization of Kosnikov's claim. Respondent analogizes Connecticut v. Doe to Kosnikov's claim by arguing that, since § 1225(b) does not provide for any bond hearing (or consideration of dangerousness or risk of flight), Kosnikov's contention that he presents no risk of flight or danger to the community is irrelevant and he cannot seek a hearing on any of these issues as a matter of procedural due process. Id. at 9–14. Respondent also argues that risk of flight and danger to the community are irrelevant to Kosnikov's detention and, therefore, he has no right to a bond hearing where those issues would be evaluated. Id. at 10. Respondent contends that to the extent a petitioner in mandatory

detention can assert an as-applied challenge to prolonged detention, the petitioner can only do so if the removal proceedings have become a "sham," and Kosnikov has not made that showing.[7] Id. at 12. Kosnikov does not respond to Respondent's arguments. Doc. 26.

Respondent's attempt to characterize Kosnikov's claim as a substantive due process claim is unconvincing for several reasons. First, Kosnikov alleges a violation at the core of the Constitution's procedural due process guarantees (i.e., prolonged custodial detention without an individualized hearing). Second, Connecticut v. Doe is distinguishable because: unlike Connecticut v. Doe, the relief Kosnikov seeks *is* relevant to the statutory scheme; the facts of Connecticut v. Doe arose in an entirely different context; and Respondent has attempted to define the liberty interest at stake in Kosnikov's claim far too narrowly.

### A. The Distinction Between Procedural Due Process and Substantive Due Process

It is helpful to address at the outset the distinction between procedural due process claims and substantive due process claims. The most familiar function of the Due Process Clause is "to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). Thus, procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty.'" Mathews v. Eldridge, 424 U.S. 319, 332 (1976). At its core, procedural

[7] Respondent contends that after Demore v. Kim, 538 U.S. 510 (2003), a detainee challenging prolonged detention under § 1226(c) can only do so "on the ground that his removal proceedings [have become] a sham." Doc. 25 at 12–13. Presumably, Respondent suggests this same criterion would apply in the § 1225(b) context and, thus, the only inquiry here would be if Kosnikov's removal proceedings have become a sham. Respondent offers no controlling authority for this proposition, and I am aware of none. To the extent this is the "standard" Respondent advocates for, I reject it as superficially briefed and not supported by controlling authority.

due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

The Due Process Clause also contains a substantive component. The substantive component provides "heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997); see also Loving v. Virginia, 388 U.S. 1 (1967). In contrast to procedural due process, substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins, 503 U.S. at 125. In the substantive due process context, much turns on whether the asserted right is a "fundamental liberty interest." If the right is a fundamental liberty interest, then substantive due process forbids government infringement of that right "no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301–02 (1993). If the right asserted is not a fundamental liberty interest, then government infringement of the right need only be rationally related to a legitimate governmental purpose. Id.; see also Littlejohn v. Sch. Bd. of Leon Cnty., 132 F.4th 1232, 1240 (11th Cir. 2025) (noting the different levels of scrutiny applied to substantive due process claims and explaining that if a plaintiff alleges that executive action violated a fundamental right, then the plaintiff must also show that the action would "shock the contemporary conscience"). Because much hinges on whether an asserted right is a fundamental liberty interest, the substantive due process analysis "must begin with a careful description of the asserted right . . . ." Reno, 507 U.S. at 302.

Many noteworthy substantive due process decisions concern rights that are "unexpressed" in the plain text of the Constitution and, therefore, require courts to consider

whether the right is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." See Mirabelli v. Bonta, 607 U.S. 492, 499 (2026) (Barrett, J., concurring) (discussing parental rights); Glucksberg, 521 U.S. at 720 (discussing prohibition against physician-assisted suicide); Loving, 388 U.S. at 1 (concerning the right to marry); Skinner v. Okla. ex rel. Williamson, 316 U.S. 535 (1942) (concerning the right to have children). Although substantive due process claims typically involve these "unexpressed" rights, some involve obvious liberty interests, like the right to be free from physical restraint. United States v. Salerno, 481 U.S. 739, 746 (1987) (recognizing that pretrial detention of an individual may violate substantive due process where that detention constitutes impermissible punishment before trial).

Respondent invites the Court to look past the plain allegations in the Petition and conclude that the claim is more accurately a substantive due process claim. But looking at the core of Kosnikov's claim—both in terms of the right asserted and the relief requested—it is clear that Kosnikov is asserting a procedural due process claim.

Kosnikov is not asking for vindication of some "unexpressed" right, akin to a parental right or a right to marry or asking the Court to "break new ground." Rather, Kosnikov is asserting the right to be free from physical restraint, which "lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Kosnikov is asserting the right to be free from physical restraint "in the sense of shackles, chains, or barred cells" that was not present in substantive due process cases like Reno. See 507 U.S. at 302 (explaining that the plaintiffs in that case merely asserted the right "to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution"). Moreover, Kosnikov is not asking for absolute release from that

physical restraint—instead, he is asking for an individualized determination at a hearing (i.e., a procedural safeguard) about whether further detention is necessary.

Respondent confuses the right Kosnikov asserts (to be free from physical restraint) with the relief he requests (an individualized bond hearing). This distinction demonstrates that Kosnikov is asserting a procedural due process claim. Kosnikov does not challenge Respondent's authority to detain him under § 1225(b) altogether. Kosnikov is not challenging "government actions regardless of the fairness of the procedures used to implement them." Collins, 503 U.S. at 125 (describing a substantive due process claim). Instead, Kosnikov contends that his prolonged and indefinite detention, without any individualized bond hearing, has now become unconstitutional. Kosnikov asks the Court to order Respondent to provide procedural safeguards in the form of an individualized bond hearing. In fact, Kosnikov does not even challenge Respondent's authority to detain him once those procedural protections have been provided.

**B. Connecticut v. Doe Is Not Analogous**

Respondent argues that the decision in Connecticut v. Doe supports his characterization of Kosnikov's claims as substantive due process claims. Respondent's reliance on Connecticut v. Doe is unconvincing because it relies on a faulty premise and because that case arose in an entirely different context.

***1. Connecticut v. Doe's facts are distinguishable.***

In Connecticut v. Doe, the plaintiff asserted a 42 U.S.C. § 1983 claim challenging a state sex offender registry law, which included a public disclosure of registrants' names, addresses, photographs, and descriptions. 538 U.S. at 5. The plaintiff asserted that public disclosure of personal information without a pre-deprivation hearing to address his dangerousness was a violation of his due process rights. Id. The Court rejected the challenge, noting that the plaintiff

expressly disavowed a substantive due process claim and relied only on procedural due process protections. Furthermore, any procedural due process challenge failed because the plaintiff sought to disprove his dangerousness at a pre-deprivation hearing, but dangerousness was irrelevant to public disclosure under the state's sex offender registry law. Id. at 8.

Connecticut v. Doe is distinguishable based on its facts and the legal interest to be adjudicated. In Connecticut, the only "interest" the plaintiff asserted was in not having his personal information publicly disclosed. The plaintiff pointed to no other liberty interest and expressly disavowed any claim for a substantive due process violation. Thus, the Court only needed to consider if the plaintiff was entitled to a hearing to dispute his own dangerousness. Because dangerousness was immaterial to disclosure, the plaintiff was not entitled to an opportunity to disprove his dangerousness.

Kosnikov, on the other hand, asserts the right to be free from physical restraint, which lies at the heart of the liberty the Due Process Clause protects. The plaintiff in Connecticut v. Doe merely sought to avoid the disclosure of his personal information under a statutory regime. The facts and claims are fundamentally different.

***2. Kosnikov seeks relief that is relevant to the statutory scheme.***

Respondent argues that Kosnikov's danger and risk of flight are irrelevant considerations to § 1225(b), which Respondent contends makes this case like Connecticut v. Doe. Doc. 25 at 10–11. Respondent contends Kosnikov is seeking recognition of some substantive right outside of the procedural protections contained in the statute and, consequently, asserts a substantive due process claim. See Connecticut, 538 U.S. at 8 (holding that "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme[]").

Respondent's argument is built on a faulty foundation. Dangerousness and risk of flight are relevant to detention under § 1225(b). Aliens who are detained under § 1225(b) may be released on parole for "humanitarian reasons or significant public benefit," so long as they "present neither a security risk nor a risk of absconding." See Noyola v. Bondi, No. 1:26-CV-405, 2026 WL 607266, at *3 (W.D. Tex. Mar. 4, 2026) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b)). Thus, the parole determination, which constitutes a cessation of ongoing § 1225(b) detention, plainly depends on the individual's flight risk and dangerousness. It is difficult to see how these issues are relevant to parole but are not relevant to ongoing detention.

Moreover, it is well established that civil immigration detention—whether mandatory or permissive—is constitutional only to the extent it serves the non-punitive, immigration-related purpose of facilitating lawful removal of removable aliens. See Wong Wing v. United States, 163 U.S. 228, 235 (1896) ("[D]etention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."); id. at 236 ("The order of deportation is not a punishment for crime . . . . It is but a method of enforcing the return to his own country of an alien [who is lawfully removable]."). Consequently, civil detention under § 1225(b) is only constitutional if it serves a non-punitive immigration purpose—namely, ensuring appearance at future immigration proceedings (i.e., facilitating the removal process) or preventing danger to the community. Id. at 235. Kosnikov merely seeks an individualized determination about whether these purposes—appearance at future proceedings and protecting the community—are served by additional detention. Doc. 26 at 15.

In contrast, the hearing that the plaintiff in Connecticut v. Doe sought would have only allowed the plaintiff to prove a fact that was immaterial to a statutory regime that resulted in

disclosure. Even if the plaintiff in Connecticut v. Doe could have proven that he was not dangerous, his identifying information still would have been disclosed under the sex offender registry statute. Kosnikov, however, seeks an individualized bond hearing to address facts that are necessarily germane to ongoing physical restraint. Therefore, whether Kosnikov is a flight risk or a danger are, in fact, relevant considerations.

In sum, I recommend the Court reject Respondent's argument that Kosnikov's procedural due process claim is actually a substantive due process claim.

**III. The Due Process Clause Prohibits Unreasonably Prolonged Immigration Detention**

The United States Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited and, typically, accompanied by an individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals. See Salerno, 481 U.S. at 750–51; Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Kansas v. Hendricks, 521 U.S. 346, 360, 364 (1997).

In the immigration setting, the Supreme Court has explained that unreasonably prolonged immigration detention likely violates the Constitution. For example, in Zadvydas, the Court observed: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." 533 U.S. at 699. Although the Court in Zadvydas decided the case based on statutory construction, the Court's analysis was driven by the notion that indefinite or permanent detention of immigration detainees would "raise a serious constitutional problem." Id. at 690.

Two years later, in Demore v. Kim, the Supreme Court considered a due process challenge to 8 U.S.C. § 1226(c), which requires detention during removal proceedings for aliens who have been convicted of certain crimes. 538 U.S. 510 (2003). In Demore, the Court held

that the government could constitutionally detain deportable aliens during the limited period necessary for their removal proceedings. Id. at 518–21, 526, 529–30. The Court's conclusion was based on the "brief" nature of mandatory detention under § 1226(c), which, in the vast majority of cases, was less than five months' time. Justice Kennedy, in his concurring opinion, reasoned that an alien could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified" under the Due Process Clause. Id. at 532 (Kennedy, J., concurring) (citation omitted).

In 2018, in Jennings, the Supreme Court held that the plain language of § 1225(b)—under which Kosnikov is detained—mandates detention of aliens throughout the completion of applicable proceedings. Jennings, 583 U.S. at 297, 302. The Court rejected the notion that § 1225(b) itself contains an implicit "reasonableness" requirement, which the lower court read into the statute using the doctrine of constitutional avoidance. Notably, the Jennings Court declined to address whether the Constitution places procedural due process limits on prolonged detention under § 1225(b). Id. at 312. The Court remanded the case to the lower court to determine if there was any constitutional limit on prolonged detention under § 1225(b).[8] Id.

Viewed together, the Supreme Court's jurisprudence on non-punitive detention—especially in the immigration context—supports the view that unreasonably prolonged detention will violate the Due Process Clause at some point. And the Supreme Court has never held, or even suggested, that the Due Process Clause does not ensure a right against unreasonably prolonged detention for aliens located within the territorial jurisdiction of the United States. I

[8] It does not appear that the lower courts ever definitively addressed the constitutional issue upon remand.

therefore conclude that detainees held under § 1225(b)—such as Kosnikov—have a constitutional right against unreasonably prolonged detention.[9]

## IV. Factors Used to Assess Whether Kosnikov's Detention Has Become Unreasonably Prolonged in Violation of the Due Process Clause

Now that I have concluded that Kosnikov is entitled to constitutional procedural due process protections, I must address how the Court should evaluate whether Kosnikov's detention has become unconstitutionally prolonged. The Eleventh Circuit has not addressed the constitutionality of prolonged mandatory detention of aliens held in § 1225(b) detention and, therefore, it is unclear what test applies. In Alekhin, I recommended a balancing test similar to that stated in Sopo v. U.S. Att'y Gen. ("Sopo I") but modified the factors to fit the statute and circumstances at issue. Alekhin, Case No. 5:25-cv-58, ECF No. 36, p. 19 (citing 825 F.3d 1199, 1204 (11th Cir. 2016)). Those factors are: (a) the duration of Petitioner's detention; (b) the cause of the protracted removal proceedings; (c) the likelihood of Petitioner's removability; (d) whether Petitioner's detention is similar to a penal institution; and (e) the likelihood that Petitioner's removal proceedings will conclude in the near future. The parties in this case have provided supplemental briefing directly addressing these factors, and I recommend the Court apply the same framework when evaluating Kosnikov's claim.

---

9 It is important to note that none of the Supreme Court cases cited here (i.e., Zadvydas, Demore, and Jennings) preclude Kosnikov's claim. See Black v. Decker, 103 F.4th 133, 149 (2d Cir. 2024) ("[Demore] said nothing about whether due process may eventually require a hearing."). If Demore precludes due process challenges like Kosnikov's, then the Jennings Court would not have remanded the case for the lower courts to consider the petitioners' prolonged detention argument. The Jennings Court could have simply concluded that the petitioner had no constitutional claim. But Jennings expressly left the door open to due process claims regarding prolonged claims by § 1225(b) detainees.

## V. The Relevant Factors Show That Kosnikov's Detention Without a Bond Hearing Has Become Unconstitutionally Prolonged

### A. Duration of Detention

Kosnikov has been in DHS custody since March 27, 2024. At the time he filed his petition on December 9, 2025, he had been in detention for 21 months. Doc. 1. He has now been detained for a period of detention exceeding 28 months. However, Respondent argues that no "specific time limitation applies to aliens such as Kosnikov who have not been admitted and are treated, for constitutional purposes, as if stopped at the border." Doc. 25 at 15. Respondent contends that, like the petitioner in Alekhin, Kosnikov was "granted relief from removal by an immigration judge in September [] 2025, approximately 10 months ago." Id. Respondent concludes that "if the grant of withholding relief is the touchstone as the Alekhin [Report and Recommendation] presumed, Kosnikov's case has not yet advanced to that stage and his detention may remain in the presumptively reasonable period even at the 28-month mark." Id.

In Zadvydas, the Supreme Court held that a period of detention up to six months is "presumptively reasonable." 533 U.S. at 701. Kosnikov's detention has continued far beyond that.[10] Sopo, 825 F.3d at 1217; see, e.g., Rashid v. Trump, No. 2:25-CV-732, 2025 WL 3210955, at *9 (D. Vt. Oct. 27, 2025) (holding that 15-month detention was unreasonably prolonged and ordering bond hearing); Paiz v. Decker, 18-CV-4759, 2018 WL 6928794, at *7

[10] I do not conclude that detention under § 1225(b) is only presumptively reasonable up to the six-month mark. Indeed, detention longer than six months for § 1225(b) might also be reasonable. Detention under § 1225(b) is fundamentally different from detention under 8 U.S.C. § 1231 (i.e., the type of detention considered in Zadvydas). Given that § 1225(b) concerns aliens who have never entered or been admitted to the United States, it may be that the Attorney General may detain such individuals longer to evaluate admission and conduct removal than would be appropriate for aliens who are already subject to removal under § 1231. At this point, there is no controlling authority on what period of detention is presumptively reasonable under § 1225(b). The parties have not addressed what should be considered presumptively reasonable. Regardless, Kosnikov has been detained for nearly 29 months. For the purposes of this factor alone, that period is certainly prolonged.

(S.D.N.Y. Dec. 27, 2018) (stating that 16 months was an "extraordinary length of time" to be "continuously incarcerated" and granting petitioner a "prompt bond hearing"); Maliwat v. Scott, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (over one year of detention was unreasonably prolonged); Leke v. Hott, 521 F. Supp. 3d 597, 604–05 (E.D. Va. Feb. 23, 2021) (ordering bond hearing where petitioner was detained for two years); but cf. Gevorg v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-00992, 2025 WL 3496436, at *7 (E.D. Cal. Dec. 5, 2025) (holding that petitioner's seven-month detention continued to serve the purported immigration purpose, had a definite termination point, and was thus lawful). In addition, whether a petitioner has been granted relief from removal is relevant to the overall analysis, but it was not the "touchstone" in Alekhin and has no bearing on the objective duration of a petitioner's detention. Under any calculation (21 or almost 29 months or more than 10 months after the asylum decision), this factor weighs in Kosnikov's favor.

**B. Cause of the Protracted Removal Proceedings**

Respondent argues that Kosnikov's "repeated requests for continuances are the cause of the protracted removal proceedings" from the date he was detained through the date the immigration judge granted him relief from removal. Doc. 25 at 16. In addition, Respondent states that the briefing before the BIA was finalized six months ago and remains pending. Id.

Kosnikov argues in response that the initial delays were largely due to his efforts to obtain counsel before the immigration court and to DHS transferring him to different detention centers. Doc. 26 at 8. And since he was granted asylum in September 2025, Kosnikov asserts that his proceedings have continued because DHS has appealed the grant of asylum. Id. at 9.

I conclude that neither Kosnikov nor Respondent is primarily responsible for the delay in proceedings. There is no evidence that either side has purposefully delayed proceedings or negligently mishandled the case. This factor is neutral and weighs in neither party's favor.

**C. Possibility of Forthcoming Removal**

Next, I consider the likelihood that Kosnikov will be removed. Kosnikov argues that his removal chances are "quite low[]" because he has been granted asylum and he has "an alternative avenue to asylee status" due to the petition his husband filed for him. Id. at 10.

Respondent disagrees, arguing that "[i]f Petitioner becomes subject to an administratively final order of removal to Russia, there is a significant likelihood that he will be removed to Russia in the reasonably foreseeable future." Doc. 25 at 17. Respondent explains that "ICE/ERO is currently removing aliens to Russia." Id.

The only evidence either party submitted on this point is the Declaration of Deportation Officer Nicholas McLeod that Respondent proffered. In the Declaration, Officer McLeod states that "ICE/ERO is presently removing Russian nationals subject to final orders of removal to Russia." Doc. 25-1 at 2. Kosnikov argues that "in the unlikely scenario that [he] is somehow ordered removed, DHS will likely face difficulties in effectuation his removal to Russia." Doc. 26 at 10. Kosnikov asserts that in 2020, the United States designated Russia as "recalcitrant/uncooperative" in accepting its own citizens and, as of December 2024, Russia was still considered a recalcitrant county. Id. To underscore this contention, Kosnikov states that approximately one-third of the Russian nationals in ICE detention with an administratively final order of removal were actually removed in 2024. Id. at 10–11.

As with the petitioner in Alekhin, Kosnikov has been granted asylum (though on appeal), making removal to Russia unlikely. Alekhin, Case No. 5:25-cv-58, ECF No. 36, p. 27. The

record on this point is extremely limited, but Kosnikov has shown it is more likely than not he will not be removed. This factor cuts slightly in Kosnikov's favor.

**D. Kosnikov Arguably Shows His Detention Is Similar to Penal Detention**

Kosnikov argues that the conditions at the Folkston ICE Processing Center "are prison-like." Doc. 26 at 12. He also declares that he is required to wear a uniform similar to those who have been criminally prosecuted, he is subject to several mandatory counts each day and access to phones, toilets, and showers is limited during these counts, there are dangerous or inadequate conditions, there is very limited outdoor recreation time, and movement is strictly controlled and under armed supervision. Doc. 18 at 2. Respondent argues that the burden is on the petitioner in any habeas case, and Kosnikov here "has presented only vague and unsupported allegations about the conditions at Folkston, which falls short of meeting his burden." Doc. 25 at 17–18.

Kosnikov has arguably shown that the conditions at the ICE Processing Facility are similar enough to those in a penal institution. And he has been subject to those conditions the entire time of his nearly 29-month detention. This factor weighs in Kosnikov's favor.

**E. Likelihood Removal Proceedings Will Conclude Soon**

Respondent argues that Kosnikov's removal proceedings will soon conclude because they are "at an advanced stage" due to the pendency of the BIA appeal. Doc. 25 at 18. Kosnikov argues it could take several more months for the BIA to rule on DHS's appeal in his case, given the BIA's backlog of cases. Doc. 16 at 13. If the BIA grants DHS's appeal and remands the case back to the immigration judge, Kosnikov asserts that his detention will continue while he pursues avenues of relief from removal. Kosnikov contends that he will petition the Eleventh Circuit for relief if the BIA reverses the immigration judge's grant of asylum. Id.

There being no evidence or indication that the BIA will issue a ruling at any time in the near future or that, even if the BIA does enter a ruling soon, Kosnikov's detention will end, I find this factor weighs in Kosnikov's favor.

Ultimately, four of the five factors weigh in favor of Kosnikov (length of detention, possibility of removal, likelihood of removal proceedings concluding soon, and the conditions of detention) and one factor is neutral (cause of delay). At more than two years' time, the length of detention has become so prolonged that this factor has increased significance. Considering all the circumstances, as well as the unique attributes of § 1225(b) detention, Kosnikov's detention has become unconstitutionally prolonged.

Given that Kosnikov's detention has become unconstitutionally prolonged, he is entitled to an individualized bond hearing. In the context of procedural due process, the Supreme Court has repeatedly confirmed that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." Bd. of Regents v. Roth, 408 U.S. 564, 569–70 (1972); accord Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848 (1977) ("It is true that before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations . . . ." (citation modified)); Mitchell v. W.T. Grant Co., 416 U.S. 600, 624 (1974) ("[Procedural due process] requires that any such deprivation be accompanied by minimum procedural safeguards, including some form of notice and a hearing."). Therefore, the Court should **GRANT in part** Kosnikov's Petition. The Court should also order Respondent to provide Kosnikov with a bond hearing before an immigration judge within seven days from the date of the final order in this case. The bond hearing should be similar in all material respects to an ordinary bond hearing under 8 U.S.C. § 1226(a).

## CONCLUSION

For the following reasons, I **RECOMMEND** that the Court **GRANT in part** the Petition, Doc. 1, **ORDER** Respondent to provide Kosnikov with an individualized bond hearing within seven days of adoption, and **DENY** Respondent's Motion to Dismiss. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I **GRANT** Kosnikov's Motion to Expedite. Doc. 27.

Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Petition must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA