# In the United States District Court for the Southern District of Georgia Waycross Division

| | |
|---|---|
| NIKITA KOSNIKOV,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FOLKSTON ICE PROCESSING CENTER,<br><br>Respondent. | CV 525-213 |

**ORDER**

The Magistrate Judge issued a Report and Recommendation for the Court to grant Petitioner Nikita Kosnikov's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus to the extent he requests an individualized bond hearing. Dkt. No. 28. Respondent filed objections to the Report and Recommendation, dkt. no. 29, and Petitioner filed a response to those objections, dkt. no. 31. For the reasons stated below, the Court **SUSTAINS** Respondent's objections, **GRANTS** Respondent's motion to dismiss, dkt. no. 13, and **DISMISSES** the petition.

**DISCUSSION**

**I. Petitioner's Request for an Individualized Bond Hearing**

Petitioner is a Russian citizen who entered the United States on March 27, 2024. He applied for admission to this country and was immediately placed in the custody of the Department of Homeland Security, where he has remained since

March 27, 2024. Petitioner has been detained as an "arriving alien" under 8 U.S.C. § 1225(b)(1), which requires mandatory detention pending the outcoming of his immigration court proceedings. Petitioner contends that his detention has become "prolonged and arbitrary," which violates the Fifth Amendment. Petitioner asks the Court for his immediate release on parole or bond.

Relying on the Report and Recommendation issued in the similar case of Alekhin v. Warden, No. 5:25cv58, ECF No. 36 (S.D. Ga. June 2, 2026), the Magistrate Judge rejected Respondent's argument that Petitioner is not entitled to a bond or bond hearing under § 1225(b). Dkt. No. 28 at 5 n.5. In the Report and Recommendation issued in Alekhin, the Magistrate Judge concluded that the entry-fiction doctrine—where noncitizens, though physically present within the United States, are treated as if they had been stopped at the border and are therefore entitled to fewer constitutional protections—does not apply to applicants for admission who challenge their prolonged detention as violative of their procedural due process rights. Alekhin, No. 5:25cv58, ECF 36 at 7, 17. In so concluding, the Magistrate Judge reasoned that "the entry-fiction doctrine has typically only been applied to claims related to the admissions process (i.e., the procedures for gaining legal admission into the United States)," not to claims related to detention. Id. at

7. In the Report and Recommendation issued in *this* case, the Magistrate Judge concluded that "unreasonably prolonged detention will violate the Due Process Clause at some point," and, therefore, "detainees held under § 1225(b)—such as [Petitioner]—have a constitutional right against unreasonably prolonged detention." Dkt. No. 28 at 14, 15. The Magistrate Judge ultimately concluded that Petitioner's detention without a bond hearing has become unconstitutionally prolonged, id. at 16, and recommended that the Court grant Petitioner's 28 U.S.C. § 2241 petition to the extent he seeks an individualized bond hearing, id. at 20.

In its objections to the Report and Recommendation, Respondent argues that binding precedent forecloses the Magistrate Judge's conclusions that the entry-fiction doctrine does not apply in the context of an alien's detention and that the Fifth Amendment Due Process Clause provides a basis to challenge prolonged detention. Dkt. No. 29 at 1. Respondent states that "[b]oth the Supreme Court and the Eleventh Circuit have held, in still-binding decisional law, that the entry-fiction doctrine governs *detention challenges* of aliens who have not entered the United States." Id. at 2 (emphasis in original). To support this argument, Respondent points to Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212

(1954), and Jean v. Nelson, 727 F.2d 957 (11th Cir. 1984) (en banc).

In Mezei, Ignatz Mezei was a resident alien who had lived in the United States from 1923 to 1948. 345 U.S. at 208. In May of 1948, he sailed to Europe, attempting to visit his dying mother in Romania but was denied entry. Id. About nineteen months later, Mezei headed back to the United States. Id. Upon arrival in February 1950, "he was temporarily excluded from the United States by an immigration inspector acting pursuant to the Passport Act," and "he was received at Ellis Island" pending disposition of his case. Id. In May 1950, the Attorney General "ordered the temporary exclusion to be made permanent without a hearing before a board of special inquiry." Id. Several attempts to send Mezei elsewhere failed. Id. at 208-09. "In short, [Mezei] sat on Ellis Island because [the United States] shut him out and others were unwilling to take him in." Id. at 209.

Eventually, Mezei sought relief through a series of habeas corpus proceedings, "[a]sserting unlawful confinement on Ellis Island." Id. After four unsuccessful attempts, the U.S. District Court for the Southern District of New York sustained the writ. Id. The court, "vexed by the problem of 'an alien who has no place to go,' did not question the validity of the exclusion order but deemed further 'detention' after 21 months

excessive and justifiable only by affirmative proof of respondent's danger to the public safety." Id. Thus, the court directed Mezei's "conditional parole on bond." Id. The Second Circuit Court of Appeals affirmed, concluding that "to 'continue an alien's confinement beyond that moment when deportation becomes patently impossible is to deprive him of his liberty,'" and finding Mezei's "'confinement' no longer justifiable as a means of removal elsewhere, thus not authorized by statute, and in violation of due process." Id.

The Supreme Court reversed. Id. at 216. It first noted "that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Id. at 212. "But," the Court stated, "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress, it is due process as far as an alien denied entry is concerned.'" Id. (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950)). The Court then addressed Mezei's "continued exclusion on Ellis Island." Id. at 215. The Court determined that Mezei's prior years in the United States did not qualify him as a resident alien because his nineteen months abroad was "a clear break in [his] continuous residence here." Id. at 214. Thus, for constitutional purposes, Mezei was "an entrant alien"

"treated as if stopped at the border." Id. at 214, 215. Recognizing that Mezei's "movements [were being] restrained by authority of the United States," the Court concluded that Mezei's "continued exclusion" did not "deprive[] him of any statutory or constitutional right." Id. at 213, 215.

The next case Respondent cites, Jean, relies on Mezei. In Jean, a class of "excludable or unadmitted aliens" from Haiti brought, *inter alia*, an equal protection claim pursuant to the Fifth Amendment, arguing the Immigration and Naturalization Service's ("INS") new detention policy was "illegal because it is discriminatory either on its face or in its application, since Haitian aliens appear to be disproportionately affected by the new policy." 727 F.2d at 961. Beginning with the equal protection claim, the Eleventh Circuit Court of Appeals, sitting *en banc*, looked to Mezei. The court first characterized Mezei as a case about unlawful detention. 727 F.2d at 970 ("The gravamen of Mezei's complaint was clearly not the government's right to exclude him . . . but the power of the government to continue to detain him without a hearing pending his deportation."); id. (Mezei concerned "the rights of an alien when challenging his continued detention pending the enforcement of an exclusion order that has been entered against him."). The Eleventh Circuit concluded that the entry-fiction "doctrine's applicability clearly is not limited to challenges relating to

the admission decision itself." Id. The Eleventh Circuit stated, "Mezei compels us to hold that the [excludable alien] plaintiffs in this case cannot claim equal protection rights under the fifth amendment." Id.

The Eleventh Circuit acknowledged that Mezei "has been heavily criticized by academic commentators" but also recognized that, "[a]s an intermediate appellate court, . . . [it] cannot properly question the continued authority of this Supreme Court precedent." Id. at 971. The Eleventh Circuit went on to remand the case to the district court to determine whether lower-level INS officials, when making parole determinations, conformed to new INS parole regulations requiring no discrimination on the basis of race or national origin. Id. at 978.

The Supreme Court affirmed the Eleventh Circuit's judgment in Jean, but only as to remand. As to the Eleventh Circuit's holding that "the Fifth Amendment did not apply to the consideration of unadmitted aliens for parole," the Supreme Court stated the Court of Appeals should not have reached that issue. The Court began with the well-established rule that, "[p]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." Jean v. Nelson, 472 U.S. 846, 854 (1985). The Court then stated that, had the Eleventh Circuit "followed this rule, it would have addressed the issue involving the immigration statutes and

[Immigration and Nationality Act] regulations first, instead of after its discussion of the Constitution. Because the current statutes and regulations provide petitioners with nondiscriminatory parole consideration—which is all they seek to obtain by virtue of their constitutional argument—there was no need to address the constitutional issue." Id. at 854-55.

Respondent argues that Mezei and Jean stand for the proposition that the entry-fiction doctrine bars Petitioner's constitutional challenge to his detention. See Dkt. No. 29 at 11-12. In the Report and Recommendation, however, the Magistrate Judge found that these cases do not control the outcome of this case.

First, the Magistrate Judge distinguished Mezei from § 1225(b) detention cases, like Alekhin and the present case, stating that, in Mezei, the Supreme Court "did not address any sort of due process claim by Mezei related to his ongoing detention." Alekhin, No. 5:25cv58, ECF 36 at 9. But Mezei shows the Supreme Court *did* consider such a claim *and* held that the claim was foreclosed by the entry-fiction doctrine. The Court first recognized Mezei's ongoing detention. Mezei, 345 U.S. at 213 (stating that Mezei's "movements are restrained by authority of the United States"). And the Court expressly found that Mezei's "continued exclusion" did not deprive him of any statutory or constitutional right. Id. at 215. Any

constitutional right necessarily includes due process rights. Further, the Court reiterated that "due process" for "an alien on the threshold of initial entry" is "the procedure authorized by Congress." Id. at 213; see also id. at 216 (noting no "statutory authority for [bond] release exists" under the applicable statute). And the Supreme Court stated that Mezei's "right to enter the United States depends on the congressional will, and courts cannot substitute their judgment for the legislative mandate." Id. at 216. This conclusion obviated the need for further discussion of Petitioner's due process rights.

The Magistrate Judge next concluded that Jean does not control § 1225(b) detention cases like this one "because the Supreme Court stated it was inappropriate for the Eleventh Circuit to reach the constitutional issue." Alekhin, No. 5:25cv58, ECF No. 36 at 11 n.3. While the Eleventh Circuit did—according to the Supreme Court—decide a constitutional issue unnecessarily, it does not follow that the constitutional holding in Jean loses its precedential value. United States v. Files, 63 F.4th 920, 931 (11th Cir. 2023) ("Our precedent about precedent makes clear that strict necessary-ness is not essential to a statement's holdingness."). Further, Jean has not been overturned. Id. at 23 ("Under our prior-panel-precedent rule, an earlier panel's holding is controlling 'unless and until it is overruled or undermined to the point of

abrogation by the Supreme Court or by this court sitting *en banc*.'" (quoting United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008))). Indeed, after Jean was decided, the Eleventh Circuit expressly adhered to its constitutional holding therein. Fernandez-Roque v. Smith, 734 F.2d 576, 581-82 (11th Cir. 1984) (holding that, based on Jean and Mezei, excludable aliens "lack a constitutional liberty interest" with regard to their continued detention and denial of parole).

The Court finds Mezei and Jean compel this Court to hold that the entry-fiction doctrine applies to Petitioner's procedural due process claim.[1] Therefore, under the current law, a person in Petitioner's particular posture lacks a constitutional liberty interest in his continued detention. While this is not necessarily the result the undersigned would issue if writing on a blank slate, like so many slates presented to a district court, this one has been written upon by higher courts. Accordingly, the Court **GRANTS** Respondent's motion to dismiss Petitioner's procedural due process claim and request for an individualized bond hearing.

[1] In response to Respondent's objections, Petitioner appears to concede that Mezei and Jean are still good law but asks the Court to cabin their holdings as "address[ing] constitutional rights regarding parole and admission (or the lack thereof)" and not "prolonged physical restraint" without an individualized hearing. Dkt. No. 31 at 12, 13. However, such an argument is unpersuasive given Mezei's holding that the respondent's continued exclusion *without a hearing* does not amount to an unlawful detention. 345 U.S. at 207, 215.

## CONCLUSION

After an independent and de novo review of the entire record before the Magistrate Judge, the Court **SUSTAINS** Respondent's Objections and **REJECTS** the recommendation to grant in part Petitioner's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Instead, the Court **GRANTS** Respondent's motion to dismiss Petitioner's procedural due process claim and request for an individualized bond hearing. Therefore, Petitioner's 28 U.S.C. § 2241 petition is **DISMISSED without prejudice.** The Clerk is **DIRECTED** to close this case and enter the appropriate judgment of dismissal. Petitioner is permitted to seek an appeal on an *in forma pauperis* basis.

**SO ORDERED**, this 28 day of September, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA